ESTATE OF EDWARD J. CONNOLLY, DECEASED, ELIZABETH CONNOLLY, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. A. ANDERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 102587, 102624.   Promulgated October 17, 1941.

*Fred R. Angevine, Esq.,* and *Harvey A. Fischer, Esq.,* for the petitioners.

*Paul A. Sebastian, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for the year 1936 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Estate of Edward J. Connolly | 102587 | $4,224.23 |
| A. A. Anderson | 102624 | 4,495.16 |

The deficiencies result from the respondent's determination that Edward J. Connolly, the decedent, and A. A. Anderson received additional compensation in the amount of the excess of the fair market value of stock, purchased by them in the taxable year in accordance with options previously granted to them, over the purchase price.

The material facts are covered by a stipulation of facts, which is adopted as our findings.

The petitioner in Docket No. 102587 is the Estate of Edward J. Connolly, deceased, Elizabeth Connolly, Executrix. She is a resident of Detroit, Michigan. Petitioner in Docket No. 102624 lives at Grand Rapids, Michigan. The returns for the taxable year were filed with the collector for the district of Michigan.

Connolly and Anderson were directors, officers, and stockholders of the Hayes Body Corporation, hereinafter referred to as the company, a Michigan corporation with headquarters at Grand Rapids. In 1933 the company gave Connolly and Anderson options to purchase shares of its stock at given prices. The options had not been exercised

because of the depression, which adversely affected the market price of the shares. As of March 1, 1935, Connolly and Anderson were given new options which enabled them each to purchase 6,000 shares of the stock. Under these options each could purchase 2,000 shares during the first year of the option at 50 cents a share, 2,000 shares during the second year at $1 a share, and 2,000 shares during the third year at $1.50 per share, or the entire amount or any portion thereof during the first year at $1 a share. The options were given "by way of adjusted compensation for services theretofore and now being rendered to the corporation" by Connolly, and the resolution of the board of directors relating to the option given to Anderson reads in part:

WHEREAS, in the judgment of this Board, A. A. Anderson has, particularly during the period from 1930 to the present time, and is now rendering valuable services to the corporation at a rate of compensation deemed by the Board disproportionate to the value of said services, and,

WHEREAS, it is the sense of this Board that adjusted compensation should be accorded by the said A. A. Anderson in the form of a grant of an option to purchase shares of the capital stock of the corporation.

The resolution of the board of directors granting the option to Connolly was of like tenor.

The shares of capital stock covered by the options were authorized but unissued and were of a par value of $2 each. At the time the options were granted on March 1, 1935, the market value of the stock covered by the options, as shown by quotations on the New York Stock Exchange, was 2⅜ per share. In their income tax returns for 1935 neither Connolly nor Anderson reported any income as received from the receipt of the options in 1935.

On January 30, 1936, both Connolly and Anderson exercised their options. Connolly purchased 5,400 shares of the stock at $1 per share, or for a total of $5,400. Anderson purchased 6,000 shares of the stock for a total price of $6,000. The fair market value of the shares at the time the options were exercised was $5 a share. Neither Connolly nor Anderson sold in 1936 any of the stock thus acquired. They did not in their income tax returns for that year report any income as received from the purchase of the stock in accordance with the terms of the options.

At the time the options were exercised the company debited its cash account with the amount of the purchase price paid by each of the purchasers and debited capital surplus with a like amount equaling the excess of the par value over the price paid by each purchaser; the capital stock account was credited with the total par value of the shares thus issued.

In the determination of the deficiencies the respondent added to the net income reported by Connolly $21,600 representing the excess of the fair market value of the shares purchased by him over the

option price of the same; and in the case of Anderson added to the reported net income $24,000 representing such excess.

The respondent has added these amounts to the net incomes reported by Connolly and Anderson upon the theory that they represented additional compensation paid to them during 1936.

Section 22 (a) of the Revenue Act of 1936 defines "gross income" as including "gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid."

Article 22 (a)–1 of Regulations 94, promulgated under the provisions of the Revenue Act of 1936, provides in material part as follows:

If property is transferred by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent Sale of such property its basis shall be the amount paid for the property, increased by the amount of such difference included in gross income. * * *

There can be no question but that if the differential between the purchase price of the shares of stock acquired by Connolly and Anderson and the fair market value thereof at the time of the issuance of the stock represents additional compensation paid by the employer, such differential constitutes taxable income of the recipients. The question here is whether this differential constituted a payment made by the company as compensation for services rendered or to be rendered by the employees.

Both the Board and the courts have many times had cases before them involving questions of this character. In some the question was as to the amount of profit realized by the recipient of the stock on a subsequent sale; in others, whether the corporation issuing the stock was entitled to a deduction for the fair market value of the stock at the time it was issued as compensation paid to employees. In still others, the question has been as to whether the taxpayer was liable to tax upon the difference between the amount paid by him for the shares and the fair market value at the date of purchase.

We do not think it is possible to harmonize the cases which have been decided. In *Robinson* v. *Commissioner* (C. C. A., 6th Cir.), 59 Fed. (2d) 1008; *Salvage* v. *Commissioner* (C. C. A., 2d Cir.), 76 Fed. (2d) 112; and *Hawke* v. *Commissioner* (C. C. A., 9th Cir.), 109 Fed. (2d) 946, it was held that the cost to the taxpayer was the fair market value of the shares at the date of acquisition and that it was immaterial that the petitioners had not reported as income the differential at the time the shares were acquired. In *Bothwell* v. *Commissioner* (C. C. A., 10th Cir.), 77 Fed. (2d) 35, it was held that

the basis for computing gain upon the sale was the price paid for the shares and not their fair market value at the date of acquisition. The facts in that case showed that at the time the option contract was given the market value was not in excess of the option price; but that the price of the shares advanced, making it profitable for Bothwell to acquire the shares in a subsequent year, and in still a later year he sold them.

Where shares of stock have been issued by a corporation to an employee as additional compensation, the fair market value of such shares constitutes taxable income to the recipient. *Crowell* v. *Commissioner* (C. C. A., 6th Cir.), 62 Fed. (2d) 51; *Olson* v. *Commissioner* (C. C. A., 7th Cir.), 67 Fed. (2d) 726.

Where a corporation for the purpose of stimulating the interest of employees agrees to sell the employees shares of its stock at a price below the fair market value, the excess of the fair market value has been held to be deductible from gross income as an ordinary and necessary expense. Thus in *Alger-Sullivan Lumber Co.* v. *Commissioner* (C. C. A., 5th Cir.), 57 Fed. (2d) 3, the lumber company agreed in 1918 to sell 150 shares of stock to its employees at a price of $50 per share. The record does not show the fair market value of the shares at the time the agreement was entered into. The dividends declared upon the stock equaled the purchase price in 1921. At that time the stock had a fair market value of $18,375. The court held that that amount less the price paid for the stock by the employees constituted a legal deduction from gross income of 1921. The converse of that would appear to be that the employees received taxable income in 1921 of the difference between the fair market value of the shares and the contract price of $50 per share.

In *Omaha National Bank* v. *Commissioner* (C. C. A., 8th Cir.), 75 Fed. (2d) 434, the decedent had been an employee of a company for some 29 years. He entered into a contract with the company for the purchase of a number of shares of its stock. He had been accorded this right of purchase because he was a valued employee of the company and it wished to retain his services. By the terms of the contract he acquired the right to purchase 500 shares of stock at $50 per share. The company agreed to allow credits on the purchase price equal to the declared dividends upon a like number of shares and to deliver the stock to him whenever he paid the difference between the credits and the purchase price. The decedent reported as income the credits which he received from the company. The Commissioner took the position that the taxpayer had received as additional compensation the fair market value of the stock, which at the time it was delivered to him was worth considerably more than the contract price. The court held that he was not taxable upon such difference.

In *Helvering* v. *Palmer*, 302 U. S. 63, the question before the Court was whether a stockholder of American Superpower Co. who received stock purchase warrants which enabled him to purchase shares of stock of another corporation owned by the American Superpower Co. at a price less than its then fair market value realized taxable income from the receipt of the stock purchase warrants and their exercise thereof by him. The Court held that the distribution by the American Superpower Co. of warrants to purchase the stock, even though they had a market value, did not constitute a distribution of anything by the corporation but a mere offer to sell certain of its properties, and that Palmer received no taxable income from the receipt of those warrants and the exercise thereof. The Supreme Court significantly said that no income would be received by Palmer until he sold or otherwise disposed of the shares of stock purchased.

The facts in the instant proceedings show that the options given to Connolly and to Anderson were for the purpose of granting them additional compensation for services already performed and currently being performed. If Connolly and Anderson upon the receipt of those options had immediately exercised them, we think it would have to be held that each received taxable income of the difference between the amount paid for the shares and their fair market value. See *Edward J. Epsen*, 44 B. T. A. 322. Connolly and Anderson did not, however, exercise the options during 1935. They waited until January 30, 1936, at which time the fair market value of the shares was $5 per share. Quite clearly the Hayes Body Corporation paid Connolly and Anderson no additional compensation during 1935. If the options had never been exercised the optionees would never have received any additional compensation. But when the options were exercised the company parted with shares of stock which could have been sold at $5 per share. Under the theory of *Alger-Sullivan Lumber Co.* v. *Commissioner, supra,* the Hayes Body Corporation paid additional compensation in 1936 of the amounts which the respondent claims should have been included in gross income. See *Albert Russel Erskine*, 26 B. T. A. 147; *W. M. Ritter Lumber Co.*, 30 B. T. A. 231; and *Electric Storage Battery Co.*, 39 B. T. A. 121. Cf. *Delbert B. Geeseman*, 38 B. T. A. 258; *Gordon M. Evans*, 38 B. T. A. 1406; and *Herbert H. Springford*, 41 B. T. A. 1001.

From a careful consideration of the entire record in these proceedings, we are of the opinion that the determinations of the respondent were correct and they are, therefore, approved.

Reviewed by the Board.

*Decisions will be entered for the respondent.*

ARUNDELL dissents.